I can't deal with this. Thank you. Good morning, Your Honors. Ruslan Bondars is a Latvian national who was arrested at his office in Latvia one day, taken to a foreign country where he was tried for crimes that were committed by other people. People that he did not know, people that he had never communicated with, people that he didn't even know existed. And where he was denied a jury instruction upon which he based his entire defense. The jury in this case agreed, at least in part, that Mr. Bondars was innocent because it acquitted him of one of the four charges. Had the jury been properly instructed, it more likely would have agreed in full. Is that your best issue, the jury instruction issue? Yes, Your Honor. Mr. Bondars was entitled to a buyer-seller instruction in this case. He provided an anonymous file scanning service. He allowed users from all over the globe to submit a file, and that file would be scanned and checked among a number of antivirus products. And it would tell that user whether or not that file was flagged by the antivirus companies. That service, the scan-for-you service, is what Mr. Bondars was charged with in this case, despite all alternate theories that the government has raised at this point. The scan-for-you service is what Mr. Bondars was charged and tried for. And, Your Honor, there's nothing illegal about offering a file scanning service. And there's nothing illegal about offering that file scanning service anonymously. Google offers a file scanning service. It does so in a non-anonymous context. It reports the files back to the antivirus companies. In this case, Mr. Bondars' file scanning service was an anonymous file scanning service. And, importantly, with respect to the buyer-seller instruction, Your Honors, Mr. Bondars had absolutely no stake in what the users did with his service, and he had no interest in what the users did with his service. He had no need to communicate with those users. It was completely automated. In this case in particular, and I think as a lot of cybercrime cases go, Mr. Bondars was actually often three to four degrees removed from an actual malware attacker, someone who deployed the malware. The malware creator would adopt or integrate this feature into a malware toolkit, one of many tools in the malware itself. Then the malware creator would sell it or even sell it to a distributor who would distribute it to users, and those users would then deploy the malware, sometimes using the data themselves, sometimes selling that data. So he's four degrees, three to four degrees down the line. So can I just ask you, I thought the heart of this case was the preliminary to this, where Bondars and his childhood friends, I don't know how to spell that. Can you tell me how you say that? Mardashevs, Yuri Mardashevs. Clearly they conspired. There's no buyer-seller there. Well, Your Honor, they agreed to create Scan4U. Right. But creating Scan4U is not an agreement to commit a crime. And these chat messages that the government introduced, in which we objected to, for conduct that was entirely unrelated to the actual criminal charges in this case, was a lot of chatter. The government, I think it's important to note in this case, the government seized every possible electronic device that it could get its hands on, from Mr. Bondar's home and Mr. Bondar's office, seized every electronic device from Mardashevs. The verdict found that they were, they aided and abetted, the Bondars aided and abetted the substantive offenses. His co-conspirator in doing this. So I don't know that the buyer-seller defensibility goes to that at all. You have a jury verdict there. It does, Your Honor, because the government introduced testimony from these users and then proceeded to ask each of these users, did you have any agreements with Scan4U? If they had an agreement with each other to commit an unlawful object, committed an offense against the United States, they're guilty. That's it. Yes, Your Honor, and I... That's what the government says they got here, right? The government's theory was... You say they didn't. The government's theory was twofold. The government had one theory that Mr. Bondar's was conspiring with the users of the service. They have a theory, but they don't need it. They have an alternative basis. They got a theory that these two birds were conspiring with each other? They actually have two theories with respect to the Bondar's and Mardisev's conspiring with each other. The first one was actually charged. That's the one that Your Honor noted, Mr. Bondar's and Mr. Mardisev's conspiring with each other to assist, to aid and abet the user's activity. That also lacked the proper instructions, and I can touch on that in more detail. Well, they alleged there were six objects, right, of the conspiracy? Correct. Conspiracy to commit six different objects. Correct, Your Honor. All they had to prove was one of them. That's correct, Your Honor. Any one of the six makes them guilty of a conspiracy committed against the United States. That is correct, Your Honor. However... End of story. They're guilty. They would be. They would have a viable conviction, Your Honor, had the jury been properly instructed on each of those six. Okay, so let's go into the instruction. Let's pass this argument for just a moment. So it's pretty well established that the judge does not need to give instruction that is requested if the instruction that the judge gives fairly covers what is... Okay, and so the instruction that was given is, the evidence in the case must show beyond a reasonable doubt both that the illegal agreement was formed and that the defendant knew the purpose or goal of the agreement or understanding and then deliberately entered into the agreement intending in some way to accomplish the goal of the purpose. Mere association or discussion with others or even knowledge of criminal conduct was not enough. Sounds to me like it meets your needs. Your Honor, actually, it does not. It fails to meet the defense needs. Okay. Because, and actually one of the cases that the government sites touched on this, this is United States v. Moe, although the conspiracy instruction was given and the conspiracy instruction does have that intent element to it, a jury is not necessarily equipped to find the nuances in the buyer-seller exception to that intent. And in that case, in this Moe case, the court actually said there's a substantial risk of a jury mistaking a sale as a basis on which to find conspiracy between a buyer and a seller in the absence of a more explicit instruction. Actually, this instruction was given there? In that particular case, the court declined to offer the buyer-seller. So we don't know. However, the case law is clear in the Fourth Circuit that a defendant is entitled to a theory of defense instruction for which there's a foundation in the evidence. And I think it's very critical to note in this case that no one argued that the defendant had not raised this as a foundation in the evidence. No, what we're talking about here is that this is a fair, that they don't have to give your instruction. We've agreed on that, right? Yes, Your Honor. And this fairly covers your grounds. It does not, Your Honor, because it does not. I know you know it does not, but you haven't told me why. You've talked to me about some case where there wasn't a jury instruction. It does not, Your Honor, because it does not explain that simply because a seller of a service agrees to sell a service to a buyer of a service does not actually make them form a criminal agreement. It makes them form an agreement to enter into that transaction, but it does not make them form an agreement to commit a crime. Well, I think maybe you even got better. Court instructed that mere association or discussion with others or even knowledge of criminal conduct was not enough. But I understand your argument. Thank you, Your Honor. With respect to, Judge King, your point of the relationship between Mardisevs and Bondars, assisting or aiding and abetting the users of his service to perform two skin fights. If they conspired with each other, there is a conspiracy. If they conspired with each other to commit an offense against the United States, there is a 371 conspiracy. Yes, Your Honor. You agree with that? I agree with that, Your Honor. However. And looking at the evidence, like most favorable to the government, they were convicted of it. Under improper instructions, Your Honor, and here's why. Well, I know you're back to the instruction, but if you don't prevail on the instruction issue, you don't have anything left. No, Your Honor. If I may just respond to the conspiracy to aiding and abetting instruction point that Your Honor raised. Do they need that? In that surplus age, if they were found guilty of conspiracy to commit an offense against the United States, what's left? Why is the conspiracy to aid and abet having anything to do with it? Well, the conspiracy between them to commit the substantive, well, excuse me, the conspiracy to commit the substantive offense could have only occurred between Bondars and the users based on the evidence. And the buyer-seller exception applies. We submit that to the court. With respect to the conspiracy to aid and abet, that would have been Mr. Bondar's agreement with Mr. Mardisavs to create SCAN4U, which the government alleged was the purpose of which was to aid and abet these users in committing their malware attacks. The reason why that conviction is not a viable, it cannot be affirmed is because the elements of that offense were missing in the instructions. Which offense? Conspiracy to aid and abet. The elements were missing because this crime combines two inchoate offenses. It combines the conspiracy offense and the aiding and abetting offense. Are you saying that's not an offense? It could be, Your Honor, if the elements were appropriately recited to the jury. But in this case, the elements included only... So you're saying you can conspire to aid and abet if the instructions are correct? Correct. And the reason why the instructions were not correct in this case was because the instruction that requires the commission of the underlying offense was not given as an element of conspiracy to aid and abet. One problem with this argument is that the judge gave the instruction you submitted. The judge did not give the instruction that we submitted, Your Honor. The judge provided language following the elements of the offense that was to the effect that we wanted, but did not recite the actual elements of the offense. The judge recited the elements for conspiracy and then simply tacked on aiding and abetting language later. But the Superior Grower Supply case out of the Sixth Circuit, which to my knowledge has been the only circuit to address the actual elements of conspiracy to aid and abet, says that the commission of the underlying offense, which is not an element of just plain old conspiracy, but is an element, an essential element, of conspiracy to aid and abet. It's not merely a component of the underlying offense. It's actually an essential element, and the judge did not recite that in the elements of the offense. I'm sorry. What did you want the judge to say? Say that to me again, that he did not say, and it was in the instructions that you put before him. In the instructions that we put before him, there were three elements that the judge neglected to provide. One, that at some time during the existence or life of conspiracy, the defendant knew that the crime charge was to be committed or was being committed. That is not an element of conspiracy, but it is an element of conspiracy to aid and abet. Two, that the defendant knowingly joined the conspiracy for the purpose of aiding and abetting, commanding, or encouraging the commission of that crime. And three, that the defendant acted with the intention of causing the crime charge to be committed. Those elements were not given to the jury as conspiracy to aid and abet. Now, there were those six objects were given to the jury, right? Six possible objects of the conspiracy charge in count one. Correct, Your Honor, in the special version. And they only had to find one of them. Correct, Your Honor. And they found all six of them. They did, Your Honor. And three of the six related to this aiding and abetting stuff. And the other three related. And if you're right on that, you're still stuck with three other objects that the jury found against you. Which should have included the buyer-seller exception. So our argument. I understand. Then you go back to that instruction. Correct, Your Honor. And you must find the buyer-seller without that the defendant conspired with at least one other person. That doesn't exclude his buddy from Russia. Correct. So if his buddy from Russia was a conspirator, and any one of those six objects were proven to the satisfaction of the jury, and all six of them were on the verdict form, they're guilty under count one, and it has to be sustained. Not in this case. And they were charged in count two, or he was charged in count two with the conspiracy to commit mail fraud. And the aid and abet mail fraud. Correct, Your Honor. And the jury found both of those objects satisfied. If either one of them is satisfied, it has to be sustained. So if we give you the aid and abetting one, you're still stuck with the conspiracy to commit mail fraud. No, Your Honor, because that would have fallen under the buyer-seller exception. Well, Judge Motz dealt with that and explained that to you, but if he conspired with his buddy from Russia to commit mail fraud, if there's enough evidence of it, and the jury found there was, then count two, it has to be sustained. Your Honor, may I respond? Viewing it in the light most favorable to the government. May I respond to just that point, Your Honor? Yes, you can answer the question. Thank you, Your Honor. That was not part of the government's case. The conspiracy between Bondars and Martisads did not relate to any evidence of their own substantive wire fraud. It was only through the customers. All right. Hear from the government. Good morning, Your Honors. May it please the Court. Kellen Dwyer for the United States. Judge Motz, I think Your Honor really hit the nail on the head with the point about Mr. Martisads, that while the government did prove and the jury did find a conspiracy between Mr. Bondars and the users of Scan4U, the Court does not have to reach that question because they also found a conspiracy with Mr. Martisads. I think in the back of, maybe your colleague said this, that she maintains that the two, our defendant and his good friend, didn't do any criminal activity. So whether they conspired or not was... That may have been her view. Maybe you talked about that. Of course, Your Honor. The evidence, Mr. Martisads pled guilty and testified at trial, and there was also messages between him and Mr. Bondars backing this up. But the evidence is that the two of them were hackers. They were involved in criminal hacking schemes as far back as 2007, and there's a number of chats, a few of which we included at the very beginning of the brief to give the Court a flavor. And they invented Scan4U originally to help with their own hacking schemes and only later realized they could sell it to other people and make money. But critically, Mr. Martisads testified because some of the hacking was before the charge conspiracy in 2007, 2009. Mr. Martisads testified that they continued to engage in hacking schemes using Scan4U for its intended purpose of checking their malware before it was deployed against victims. And this went as far as 2014. And there's testimony about him using a type of malware called a minor bot in 2014 with Bondars, and there's chats that back up Martisads' testimony from 2014 where they're talking about how they're going to deploy this malware, how Bondars needs to encrypt it so it's not detected by antivirus companies. At one point, Martisads sends a link to a Scan4U results to Bondars and says, here's the result, it's being detected. And the government corroborated that by going to, you know, Mr. Martisads and Mr. Bondars had their own profiles on Scan4U, and they were scanning files which were being detected as malicious. And one of them, on the same day that Martisads sends the link to Bondars saying it's being detected, it showed that Martisads scanned a file that six antivirus companies flagged as being a Bitcoin miner, which is exactly what Martisads testified they were doing. So they were not just the presidents of Scan4U, they were also clients of their own service, and they were using it for its intended criminal purpose. And that alone, we would submit, is sufficient to uphold the verdict on the sufficiency grounds. And as Your Honor has pointed out, obviously the buyer-seller exception, regardless of the merits of that argument, wouldn't apply to an agreement with someone. We have a classic partnership agreement, as Bondars and Martisads clearly did. Your Honor. What did Martisads, how did he pronounce his name, what did he plead guilty to? He pleaded guilty to conspiracy to commit computer intrusion and aiding and abetting computer intrusions. And in exchange… He pleaded guilty to essentially the same charge that's in count one? Exactly, the same charge that is in count one. Well, did he have six objects? Did he plead guilty to an indictment or an information? He pleaded guilty to an indictment. It was the original indictment before it was… This very indictment that she went to trial on? No, Your Honor. There was a slight difference. There was a superseding indictment, which added a conspiracy to aid and abet theory. So he pled guilty to the direct conspiracy theory. Conspiracy to aid and abet theory, I really wonder whether that's a crime, to be honest with you. You all added it. Of course, Your Honor. Because aiding and abetting is not really an offense. The conspiracy under 371 has to be to commit an offense against the United States. Yes, Your Honor. Under 18… Go ahead. Under 18 U.S.C. 2… I understand what you're talking about. Aiding and abetting… It's all about section two. I think the legal significance of it is important. If you aid and abet, you're guilty as a principal. Right. So it is a crime. But is it a stand-alone crime? It is just another way of committing a crime. So you can charge section two without charging anything else? Of course not, Your Honor. Section… That has to be an offense against the United States under section 371. Yes. And section two is just another way of committing the offense against the United States. That's aiding and abetting. Right. So whether you're… It has to be tied to another offense. In other words, just aiding and abetting. You would say just aiding and abetting. Standing all alone. Not a crime. Of course, Your Honor. Section two is not a crime. Of course. And section 371 says it's a crime to conspire to commit an offense. Your Honor, respect to… And section two is not an offense. Respectfully, Your Honor, the principle of section two… I don't know where you all came up with that, but you don't need it. We don't need it, but if I could please… That's absolutely it. You don't need it here. That's what I don't understand why you threw that in here. We don't need it. And as Judge Motz points out, the government will put forward multiple theories. Nobody raised that here. Nobody's ever questioned where you come up with a charge that says conspiracy to aid and abet. Well, Your Honor, this court has affirmed conspiracy to aid and abet. It was mutually exclusive, but… In United States v. Marshall, this court has affirmed conspiracy to aid and abet. I know. As has the Sixth Circuit. As has the Ninth and the Second Circuit. And if I could just answer Your Honor's question, because you're right, we don't need this, but just for the academic purposes… You definitely don't need it. The principle of section two… Is this fellow from Russia, is he a potential conspirator in all this? Absolutely, Your Honor. Well, under the jury verdict, if we view the evidence in light most favorable to you, was he found to be a conspirator? Absolutely, Your Honor. Then she says he wasn't a conspirator, that she had to find a buyer. That's what the jury trial was all about, whether there was a common purpose. If these two are conspirators, you've got a conspiracy. We're in complete agreement on that point. And if one of the objects was set aside, case over. Yes, Your Honor. On count one. And count two. Well, count two says it has to be wire fraud. There's only one object. There's two objects. It can't be the aiding and abetting. I'm back to… You forget about the aiding and abetting, you've got the wire fraud as an object. That's correct, Your Honor. And the overwhelming purpose… Are they duplicated? No, Your Honor, because computer intrusion can be done for a number of purposes. But are they… They're a different conspiracy? It's just a conspiracy. Because wire fraud conspiracy is under a different section, that's why it was charged differently. Wire fraud conspiracy is 1349 and not 371. So they're the same conspiracy, but you have to charge. You can't charge it as one. It's the same crime. So it's multiplicitous? Your Honor, that point has not been raised. Oh, no. And it's not quite the same crime because it's an understanding of committing different… Did you consider that when you put that in there and put that count two in? We did, Your Honor, but I think… Respectfully, I don't think it would be proper for us to charge a conspiracy in one count to violate two separate conspiracy statutes. There's the 371 and… You could have a… Well, maybe you wouldn't. Maybe you wouldn't. But they're the same acts. Right. And you could have a multiple object conspiracy. It's the same evidence. Absolutely, Your Honor. But again, I would submit to anything like that nature is waived, so we can save the trouble of being concerned about it. You didn't appeal anything? Excuse me? No, go ahead. We did not appeal anything. That's correct, Your Honor. So maybe you could address briefly the jury instruction arguments that were made… Of course. …by your colleague. So with a caveat that we don't need to reach the buyer-seller question, but if we do, the basic rationale of buyer-seller is that it's an exception to the normal rule of conspiracy, which is that the agreement is punished separately. And the reason for the exception is this redundancy principle, that presumably Congress did not intend to turn every drug sale into an automatic conspiracy to distribute drugs. That rationale absolutely does not support exporting that exception out of the drug context and bringing it into a case of computer intrusion where one person acting alone can commit a computer intrusion. And when people work together, like in this case, for organized cybercrime, you have all the concerns of the normal conspiracy principle that when you're working together, there's a separate harm to the government and the public because you can commit more crime and better crime and so forth. All of that is based on your view of the evidence, right? The defense had a different view of the evidence that suggested, from their point of view, that all this was was this defendant selling his wares online to these third-party customers. Why, on that view of the evidence, wasn't this defendant entitled to that instruction? Well, so respect for your honor, I think that what my argument I was just making about the purpose of the buyer-seller exception, whether it should be applied outside of the drug context, doesn't do with the evidence in this case. It's just a question of statutory invitation, right? There's no freestanding, you know, common law buyer-seller exception. It's interpreting the statute. Courts say, well, there's no, you know, the statute does say agreement is a crime, criminal agreement. But for the drug context, we're going to read an exception into it because we're assuming Congress didn't intend this redundancy. So it's your view that that is the sole exception that a buyer-seller instruction applies to, period? There's no other context in which that instruction could apply? No, your honor. It would apply to any crime that by its nature requires a sales agreement or a transfer agreement between two people. So like distribution of child pornography, for instance. If you're distributing child pornography, there has to be that basic agreement to transfer from one person to the next. So the government couldn't charge that mere sales agreement as a conspiracy because we have the redundancy problem. We want every distribution crime into a conspiracy. But here, not only do we not have the double-counting problem, under the defendants' theory, we'd have a zero-counting problem. Because at least in the drug context, when there's a buyer-seller exception applies, the government can still charge distribution of drugs. In this context, there is no statute saying that it's a crime generally to distribute malicious computer products. So under the defendants' theory, you wouldn't be able to charge when you have an agreement that one person's going to hack, the other person's going to supply the malware. You wouldn't be able to charge that as buyer-seller because a buyer-seller couldn't be a conspiracy. And it couldn't be a substantive offense either because there's no such crime. But even the court doesn't even have to reach that, not only because of the Mardiseth's reason, but also because there's a number of exceptions to buyer-seller. So even like in the drug context, you don't get a buyer-seller instruction when it's undisputed that there are two people involved in the sale. So when there's a third person. So if we're going to treat selling scanning services as the same as selling drugs, then the fact that Mr. Mardiseth's and Mr. Bondar's agreed together to sell scanning services would negate the need for a buyer-seller instruction. Another exception to buyer-seller is that if there's an agreement to commit a further crime, you know, beyond the crime of just selling from person A to person B. And here there was, at least on the government's view and on the instructions that Judge Motz read, the instructions were very clear that you couldn't be guilty for an innocent agreement to sell, simply to sell scans from person A to person B. The government had to prove that both parties had the shared common understanding that the purpose of these scans was to be used in a later computer intrusion against the victim. So really, I mean, this goes kind of the exception but also to the prejudice argument that, you know, if there was going to be some type of buyer-seller instruction here, it couldn't be the one that the defense proposed. The defense used the one from the Seventh Circuit model instructions, and it's clearly designed for drug cases. It essentially says that it's not a crime or it's not conspiracy to distribute drugs, but if the government can show there is an agreement to redistribute, then it would be a conspiracy and it gives seven factors, including whether it's sale on consignment and the amount of the drugs. Obviously that wouldn't apply. So if there was going to be a buyer-seller instruction in this context, it would have to say essentially that selling scans by itself is not a conspiracy, unless the purpose of the agreement was that it be used for computer intrusions. And that's exactly, to Judge Motz, to the point that she read, that's what the instructions said. It was crystal clear that there had to be an agreement for the purpose of committing wire fraud, committing computer intrusion, not simply in agreement to sell scans. And that's what the entire trial. That's an argument that the defense could have, and I assume did make, in their closing? They absolutely made that point. And critically, the government agreed with it, because the defense counsel's entire theory was to tell the jury, well, you know, if ScanFu is guilty, then who's next? Any website owner can be responsible for the crimes of his or her customers. And the first thing we said in closing argument is that is not our theory, that someone is not guilty of conspiracy simply because a few bad apples misused their product. You are guilty if you create the website with a purpose that it be used for crime, and someone joins the site sharing that same essential purpose. That was the government's argument throughout closing. The entire case was about that. And you would have to concede that the jury found differently. They could have acquitted you. Absolutely, Your Honor, and I would go one step further, Your Honor, because I think there's a lot of kind of examples in the defense brief of the parade of horribles. Not only if we don't prove the intent and the agreement, presumably the jury won't convict, this court has substantial evidence review. And if we had a situation where it was a close call or there was weak evidence of intent, this court, of course, in a future case, would reserve the ability to, you know, police a government that is going after people on a negligence theory, that essentially they're not doing enough to stop crime on their website. That's why you needed this Russian fellow as a witness to prove this thing? Respectfully, I don't think we needed him. Certainly we charged the case not knowing who was going to cooperate and who wasn't. Well, he helped out. Of course. Icing on the cake for you. Icing on the cake. Absolutely. But there were so many chats on the defendant's computer where he himself is acknowledging the criminal purpose. I mean, he was informed that he was being investigated by the FBI in 2013. He got a number of these warning signs that, you know, later in 2013 Germany seizes a computer of one of their members. In 2015, one of their co-conspirators is arrested in the U.K. We have these chats. They're in the brief. They're in the record. Each time the defendant's response isn't, why are they going after us? Or, geez, we need to be more careful to get criminals off our service. Each time he says, yeah, each time he's almost comical. Each time he says, well, geez, we need to be more careful. We need to communicate better. We need to hide our association. And I think it's also a little bit of conflict in the defense brief that they, we haven't gotten into the whole Trend Micro thing, but their theory was that it was so unfair that Trend Micro, this victim company, allegedly, you know, disclosed the identity that he was the one behind Scan4U. Well, why was he hiding the fact that he was behind Scan4U? Because he knew it was a criminal service. And that's what Martiseffs testified. I asked Martiseffs, you know, I notice your name's not on here. I noticed that the defendant had registered one of the Scan4U domains under a fake name. Why was that? And he said, well, because we supposed that what we were doing was against the law. So in a case like this where you have a clear knowledge and purpose and agreement to violate the law, I submit that it's not a close call and you defer to the jury's factual finding. If there was a future case where the government went too far, of course the court would have its normal authority to engage in substantial evidence review. Thank you very much. Your Honors, I don't think it is possible for me to emphasize this point enough. And that is that Mr. Bondars was not charged with conspiring with Mr. Martiseffs to commit any type of his own hacking offenses. He was not charged with that conduct. There was no evidence of it beyond some discussions over chat. No evidence at all. But more importantly, Your Honors, there would have been no jurisdiction to have that as a theory of the case. Two people, one in Latvia, one in Russia, talking about hacking. There would have been no staggering loss amount that the government has argued at sentencing. That was not the government's theory of the case. That was not what he was charged with in this case. There would have been no jurisdiction, no evidence. There was no argument for it. And so the government is using this as an argument to… Were both those names in the indictment? The two names were in the indictment, Your Honor. But every overt act related to the creation of Scan4U, every argument in opening related to Scan4U, the case started, this case is about a defendant who designed a tool. This was not a case about a defendant… Does the indictment say that they conspired with each other and with something like others known and unknown to the grand jury? Yes, Your Honor, it does. And the others known and unknown to the grand jury to commit the substantive offenses would have been the customers. It was the only way that the government was going to get jurisdiction. It was the only way that the government was going to get its loss amount in this case. And it was the only thing that they had evidence of. Those were the two theories of liability, not this alternate theory of liability that the government now has to rely on for an affirmation. Is it the alternate theory of liability or just some evidence that goes toward the larger intent of the conspiracy? Exactly, Your Honor. It was chat messages that the government wants to use to show… When you say exactly, I'm not sure you understood my question. You're describing it in one way. You're saying the government has alternate theories of liability. I'm suggesting to you that what your colleague argued simply goes to the overall issue of intent of the conspiracy. I think that the government… Yes, the government does argue that, but then the government takes it one step farther, saying that they were committing these other ancillary activities that they don't have any evidence of other than through chat messages because it uses that to say that the buyer-seller exception would not apply. That's why, if the buyer-seller exception does not apply to conspiracy to commit the substantive offense, then the government is necessarily saying that they are trying to seek affirmation, in this case, on a theory that they did not present at trial. Did that answer your question, Judge, yes? I think so. Go ahead. Your Honor, there's really… The real heart of this is a man who is plucked from his home, brought to a foreign country, taken to a foreign system where he doesn't know the language. He's told he doesn't have the same rights as the people here, specifically Fourth Amendment rights, and he's asking for one jury instruction to present his theory of defense. Thank you very much. We understand, Ms. Carmichael, that you're court-appointed. Yes, Your Honor. We very much appreciate your services. Thank you. You did a fine job for your clients.
judges: Diana Gribbon Motz, Robert B. King, Albert Diaz